UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BRUNO, M | CIVIL ACTION NO. 6:19-cv-00886 |
| VERSUS | JUDGE SUMMERHAYS |
| U.S. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE WHITEHURST |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

The claimant, M. Bruno ("Claimant" or "Bruno"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") terminating her Disability Income Benefits ("DIB"). Claimant filed a memorandum in support of her appeal. *R. 13*. The Commissioner filed an opposition memorandum. *R. 15*. Claimant filed a Reply memorandum. *R. 17*. Based on the applicable standard of review under § 405(g) and the analysis which follows, the Court recommends that the Commissioner's September 27, 2018 decision be remanded to the Social Security Administration with instructions to vacate the Commissioner's decision and conduct further proceedings consistent with this Report and Recommendation.

## I.     SUMMARY OF PERTINENT FACTS

Claimant was born on October 22, 2003 and was 16 years old and in school at the time of the ALJ's decision. *R. 13, p. 4.* In a determination dated March 12, 2004, the claimant was found disabled as of January 1, 2004 because her hearing loss met Listing 102.08 due to hearing loss of 50 db or greater in the better ear.[1] *Id. at p. 1; R. 15, p. 1; Tr. 103.* After a disability review on September 4, 2015, the claimant's disability was ceased because she no longer met a Listing as of September 1, 2015. *Tr. 22*. A Disability Hearing Officer upheld the decision on December 12, 2017. *Tr. 88-109*. On Claimant's request, a hearing was held on June 8, 2018. *Tr. 38-72*. On September 27, 2018, ALJ Carolyn Smilie affirmed the cessation decision. *Tr. 15-37*.

The only medical records in the Administrative Record date from December 11, 2013, when claimant was re-evaluated by the Lafayette Parish School Board. *Tr. 17*. Claimant's teacher explained her low percentile ratings in all subjects by stating that she was diagnosed with bilateral hearing loss and used her hearing aids at school and glasses. Claimant received accommodations at school and had an oral interpreter when in the regular classroom during math instruction. *Tr. 176*. Claimant received speech therapy twice per week and had some improvement in her ability to answer

---

[1] The March 12, 2004 initial determination, and the evidence related thereto, are not in the administrative record.

questions and use appropriate sentence structure. *Tr. 178*. A Speech and Language test was also administered. Claimant's Listening Comprehension Language score was 68 and 2.1 standard deviation below the mean. Claimant, who was 10 years old at the time, had the age equivalent score of a 6 years-6 months old child. Her Oral Expression was equivalent to the one of a 7 year-1month old child and her Oral Composite was equal to 6 years-7month child. *Tr. 179.* The School evaluation concluded that she met the criteria for hearing impairment. *Tr. 183.*

The claimant's February 4, 2014 individualized education program ("IEP") revealed that she scored in the unsatisfactory range in all parts of the 2014 spring Learning Education Activities Program ("LEAP") test. Communication domain revealed that her speech was intelligible, but with noticeable errors and need for repetitions. It was determined that her speech had delay in Receptive and Expressive language because of her hearing impairment. *Tr. 187.*

In July, 2014, after being assessed by Dr. Nnaorm with congenital deafness, *R. 394*, the claimant underwent a hearing evaluation on July 15, 2014. Her hearing test was positive for mild to moderately severe sensorineural hearing loss bilaterally. *Tr. 360.* The hearing test revealed a hearing level of 35db at 500, 45db at 1000, 60db at 2000 and 60db at 3000. The average loss was 50 db. *Tr. 362*. The speech recognition threshold was 40 bilaterally. *Id.*

On August 26, 2014, the claimant presented to University Hospital and clinic for fitting and adjustment of her hearing aid. *Tr.356.* She was diagnosed with bilateral sensorineural hearing loss. *Tr. 357.*

Claimant's April 22, 2015, IEP revealed that her speech had noticeable errors and there was delay in receptive and expressive language mainly due to being hearing impaired. *Tr. 304.*

On August 24, 2015, Craig Sibille, the claimant's special education teacher for the prior 2 years, stated that she was in the 6th grade but her reading level was at the 3.3 grade level and her written language was at the 4th grade level. *Tr. 223.* He stated that the claimant had a serious problem in the area of acquiring and using information. He noted that, due to her hearing impairment, she needed an interpreter in order to communicate in her classes and needed information repeated to her more than one time. *Tr. 224.*

On April 22, 2016, the claimant saw Advanced Practical Registered Nurse Luczak who noted that her hearing loss had caused speech delays and emotional delay. She was referred to Phoenix Family Life Center. *Tr.442.*

Claimant's January 27, 2017's IEP showed that she received special education services for Math, Science and Study skills and she also received speech therapy. *Tr. 258.* Her spring 2017 Statewide Assessment test revealed that she scored approaching basic in ELA, and unsatisfactory in Math and Science. *Tr. 254.* In order

4

to help the claimant with her communication issues the school provided an interpreter, captioned Media and C-Print. *Tr. 255*. Claimant, who was in the 8th grade, was performing at the 3rd grade level in Math. *Tr. 258*.

## II.     ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[2] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[4]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[5] In reviewing the Commissioner's findings, a court

---

[2]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[3]     *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[4]     *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[5]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[6] Conflicts in the evidence[7] and credibility assessments[8] are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[9]

## B. <u>Evaluation Process and Burden of Proof</u>

The Fifth Circuit has addressed the scope of this Court's review of the termination of benefits.[10] Even though the burden of proving disability is on the claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the

---

[6] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[7] *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[8] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[9] *Wren v. Sullivan*, 925 F.2d at 126.

[10] *Smith v. Commissioner of Social Security*, 2017 WL 2292795, at *2 (N.D. Miss. May 24, 2017), *citing Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir. 1984) *citing Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)).

condition has remained unchanged."[11] In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved.[12] In addition, the Commissioner must weigh the facts which formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant.[13] The ultimate burden of proof lies with the Secretary in termination proceedings.[14]

"Even though the Commissioner bears the burden of proof in cessation cases, the standard of review on appeal is the same as the standard in other Social Security disability cases."[15] Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal

---

[11] *Smith*, 2017 WL 2292795, at *2, *citing Buckley*, 739 F.2d at 1048 *quoting Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)).

[12] *Smith*, 2017 WL 2292795 at *2, *citing Taylor*, 742 F.2d at 255.

[13] *Id.*

[14] *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991) ("The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings."); *Lackey v. Shalala*, 40 F.3d 384 (5th Cir. 1994) ("[T]he ultimate burden of proof lies with the Secretary in termination proceedings," *citing Griego*, 940 F.2d at 943-44).

[15] *Flagg v. Berryhill*, 2017 WL 5483168, at *1 (D. Or. Nov. 13, 2017) *citing Bellamy v. Sec. Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985).

standards.[16] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[17]

### C. The ALJ's Findings and Conclusions

The ALJ made the following relevant findings of fact and conclusions of law:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated March 12, 2004. This is known as the "comparison point decision" or CPD. *R. 9-1, p. 21.*

2. At the time of the March 2004 CPD, the claimant was determined to have medically determinable impairments: bilateral sensorineural hearing loss and speech/language impairment. These Impairments were found to meet section(s) 105.08A of 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

3. The medical evidence supports a finding that, as of September 1, 2015, there had been a decrease in medical severity of the impairments present at the time of the CPD.

At the time the claimant was paid ... she had an average hearing loss of 50 decibels or greater in the better ear.

---

[16] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[17] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

At her hearing evaluation in July 2014, the claimant reported bilateral sensorineural hearing loss since birth, and that she wore hearing aids. Testing revealed that she had mild to moderately severe sensorineural hearing loss in both ears. She was fitted with new hearing aids on August 27, 2014. The Hearing Officer said that, "current testing showed average hearing loss of less than 50 decibels in the better ear." The State agency medical consultant agreed that she had medical improved based on the testing of May 2015.

Based on the evidence, the claimant's impairment no longer meets or functionally equals a listing; thus, medical improvement occurred.

4. The results of the claimant's hearing test with audiologist Maegan Guilbeau on July 15, 2014 was interpreted as "mildly to moderately severe sensorineural hearing loss." Her speech reception threshold (SRT) was 40 db in both ears. Upon testing in May 2015, her SRT was at 15 db with hearing aids. Hearing testing at school demonstrated that the claimant's thresholds had remained consistent.... The State agency concluded that she had an average hearing loss of less than 50 decibels in the better ear. Dr. Billy McKellar, in November 2016, said the claimant's physical conditions were severe but did not meet, medically equal or functionally equal a listing. After reviewing the evidence, the undersigned agrees that the claimant does not have an impairment that meets or equals a listing in the Childhood Listings of Impairments.

9

. . .

10.   The claimant's disability ended as of September 1, 2015, and the claimant has not become disabled again since that date.

**D.   <u>The Allegations of Error</u>**

In support of her appeal, Claimant raises two assignments of error, which both arise out of her contention that the ALJ failed to consider substantial evidence in making the determination of medical improvement.

In the first assignment of error, the claimant contends that the ALJ used the incorrect legal standard in finding that she experienced medical improvement when she failed to follow the requirements of 20 C.F.R. § 416.994(b) by comparing the prior medical evidence (CPD) to the current medical evidence. *R. 13*. Claimant contends that her file containing the evidence related to her impairment at the time she was awarded benefits is absent from the record. She surmises that the ALJ either did not request or reconstruct her prior file, or worse, did not realize it was missing because there is no discussion related to the prior evidence in the ALJ's decision.

The claimant's second assignment of error specifies that the ALJ failed to provide a legally sufficient explanation as to how she reached the conclusion that the claimant's hearing impairment was insufficiently severe to still meet her original Listing 102.08.

Claimant asserts that the Commissioner's decision should be reversed with benefits awarded. Alternatively, she asserts that the decision should be remanded with an instruction for the ALJ to properly consider substantial evidence as to whether she continues to medically meet or equal a listed impairment.

**E.     The ALJ Committed Reversible Error**

*1. The Status of the CPD is Unclear*

A cessation of disability benefits requires a finding of medical improvement. 20 C.F.R. § 404.1594(a). For purposes of determining whether medical improvement has occurred, the Commissioner must compare the current medical severity of the claimant's impairments to those that were present at the time of the most recent favorable medical decision that determined the claimant was disabled or continued to be disabled, i.e., the comparison point decision ("CPD"). *Ball v. Berryhill*, 2019 WL 2079841, at *3 (E.D. La. Feb. 27, 2019), report and recommendation adopted, 2019 WL 2076328 (E.D. La. May 10, 2019) *citing* 20 C.F.R. § 416.994(b)(1)(vii). The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether the claimant was disabled or continued to be disabled, which became final. 20 C.F.R. § 404.1594(b)(7).

Neither the March 12, 2004 favorable medical decision finding that the claimant was disabled as of January 1, 2004, the CPD, nor any medical evidence

11

relating to the award of disability—including claimant's original hearing test—are in the administrative record. The ALJ cites to the Hearing Officer's Decision as the only support for Finding of Fact 3. According to the Hearing Officer's Decision, at the time Claimant was paid "[s]he had an average hearing loss of 50 db or greater in the better ear meeting Social Security Disability Listing 102.08A. Current testing shows average hearing loss of less than 50 db in the better ear." *Tr. 103,(8B/4).*

The ALJ did not expressly recognize that the CPD is not in the record despite its importance to the determination of medical improvement. It appears that the ALJ did not have the CPD because, while the ALJ references the CPD in her decision, there is no citation to the CPD itself as evidence supporting her findings. Instead, the ALJ relied upon the findings of the Hearing Officer in support of what is alleged to be contained in the CPD, and particularly, the finding of significant medical improvement. Thus, it is unclear how, and upon what evidence, the finding of significant medical improvement was reached. Relevant information as to the severity of the claimant's impairments at the time of the CPD is presumably in the CPD file, which is necessary for an evaluation of medical improvement.

"If the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors, ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Ball*, 2019 WL 2079841, at *7, *citing I.N.S. v. Orlando Ventura*, 537

12

U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). In the event an ALJ fails to follow the proper legal standard for the scenario of a missing CPD file, the Fifth Circuit had held that "remand to the Commissioner is appropriate." *Hallaron v. Colvin*, 578 F.App'x. 350, 354 (5th Cir. 2014). Claimant's "entitlement to benefits depends on further factual development and the application of a standard that the Commissioner is best placed to apply." *Id.* On remand, the ALJ should obtain and review the entire CPD file for relevant evidence regarding Claimant's impairments at the time of the CPD. If the file is lost, then the ALJ must make the determination of whether an attempt should be made to reconstruct or locate the March 2004 CPD file, following the procedure set forth in 20 C.F.R. § 404.1594(c)(3)(v). "If the file can be reconstructed, the ALJ will be able to make the comparison the regulations mandate; if not, [Bruno's] benefits will be continued, and the new ALJ decision will serve as the comparison-point decision for future [continuing disability reviews]." *Ball*, 2019 WL 2079841, at *7, *citing Hallaron* at 354.

    Because the ALJ failed to make the reconstruction determination and because relevant parts of the prior record were not reconstructed, a finding of medical improvement is precluded by operation of 20 CFR § 416.994(b)(2)(iv)(E) and *Hallaron v. Colvin*, 578 F.App'x. 350 (5th Cir. 2014).

*2. Finding That Bruno Does Not Meet Listing 102.08 is Not Legally Supported*

At the time Claimant was granted benefits Listing 102.08 read as follow:

102.08 Hearing impairments.

A. For children below 5 years of age at time of adjudication, inability to hear air conduction thresholds at an average of 40 decibels (db) hearing level or greater in the better ear; or

B. For children 5 years of age and above at time of adjudication:

1. Inability to hear air conduction thresholds at an average of 70 decibels (db) or greater in the better ear; or

2. Speech discrimination scores at 40 percent or less in the better ear; or

3. Inability to hear air conduction thresholds at an average of 40 decibels (db) or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 102.08 (2010).[18]

The only test that is signed, dated and performed by an audiologist in the file was performed on July 15, 2014, and Claimant's speech recognition threshold was 40% bilaterally. *Tr. 362*. The claimant's Speech and Language testing performed by the School Board showed that she experiences a speech and language disorder that

---

[18] While the Commissioner notes that Listing 102.08 was redesignated Listing 102.10, the amendment was effective August 2, 2010 and Listing 102.08 was in effect at the time of Claimant's CPD.

significantly affect the clarity and content of her speech as result of her hearing impairment. *Tr. 179; 187; 304; 442*. The ALJ never discussed the claimant's hearing testing, her speech discrimination scores or her speech and language disorder. *Tr. 22*. None of the ALJ's findings explain why Claimant did not meet or medically equal the criteria of Listing 102.08. Claimant's substantial rights are affected by the ALJ's failure to set out the bases for her decision that Claimant did not meet a listing. *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (ALJ's failure to set out the bases for her decision related to the Listing affected the claimant's substantial rights).

## VI. CONCLUSION

By failing to obtain and/or reconstruct Claimant's March 2004 CPD file, the ALJ used improper legal standards in reaching her conclusion that she experienced medical improvement, and the medical improvement decision is not supported by substantial evidence. Also, the ALJ failed to correctly evaluate Claimant under Listing 102.08.

For the foregoing reasons, IT IS RECOMMENDED that Claimant's appeal be GRANTED and her complaint REMANDED to the Social Security Administration with instructions to vacate the Commissioner's decision and conduct further proceedings consistent with this Report and Recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 5th day of August, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE